**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

LEO B. BROWN and RICHARD FOWLER,
**Individually and as Representatives of a
Class of Participants and Beneficiaries on
Behalf of the Huntington Ingalls Industries,
Inc. Group Benefits Plan and Huntington
Ingalls Industries Health Plan**

       **Plaintiffs,**

**v.**                                       **Case No:. 4:26-cv-34**

HUNTINGTON INGALLS INDUSTRIES, INC.
 and HII ADMINISTRATIVE COMMITTEE

       **Defendants.**

**CLASS ACTION COMPLAINT**

Plaintiffs Leo B. Brown and Richard Fowler ("Plaintiffs"), individually and on behalf of the Class of participants and beneficiaries in the Huntington Ingalls Industries, Inc. Group Benefits Plan (the "HII Plan") and the Huntington Ingalls Industries Health Plan (the "HII Health Plan"), as defined below, allege the following against Huntington Ingalls Industries, Inc. ("HII") and the HII Administrative Committee ("Committee") (collectively, "Defendants"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1.      It is unlawful for entities like HII to impose punitive health insurance sur-charges on employees who use tobacco products.

2.      This lawsuit challenges Defendants' practice of charging a "tobacco

1

surcharge" that unjustly forces certain employees to pay higher premiums for their health and other insurances provided by HII. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") of 1974 and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3.        Since at least 2020, Plaintiffs have been required to pay tobacco surcharge penalties in order to maintain health and other insurance coverage under the HII-sponsored health plan. The surcharge—approximately $660 per year for each HII employee and their spouse who uses tobacco—has imposed an additional financial burden on Plaintiffs and other similarly situated employees and continues to do so.

4.        Tobacco surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of ERISA, the Public Health Service Act ("PHSA"), and the implementing regulations.

5.        HII's tobacco surcharge program fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Therefore, HII is unable to take advantage of the statutes' safe harbor, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B), and these surcharges are discriminatory, health-based surcharges in violation of the law and in violation of the ERISA fiduciary duties owed to HII health plan participants and beneficiaries.

6.        More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health- status-related factor, including nicotine or tobacco use, unless that fee is part of a *bona fide* "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

7.        To qualify as a *bona fide* wellness program under ERISA, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a

2

participant can receive the program's "full reward;" that is, avoid the surcharge for the entire plan year (not just prospectively once the smoking cessation program has been completed).

8.      Moreover, to be a *bona fide* wellness program, a company must also provide *notice* that such a reasonable alternative exists for nicotine or tobacco users in *every Plan communication* discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated.

9.      At present, and over the last six (6) or more years, the HII Plan and HII Health Plan failed to include the proper notice in ***all*** Plan materials discussing the surcharge, including the physician-accommodation statement. Several of HII's participant-facing materials describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge as expressly required by 45 C.F.R. § 146.121(f)(4)(v). This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that all participants have a fair and compliant opportunity to be treated the same as non-nicotine-users.

10.     Additionally, the HII Plan and HII Health Plan do not provide the required reasonable alternative standard, and even if they did, Defendants have failed to adequately notify employees in all plan communications about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year. Consequently, Defendants' tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a *bona fide* wellness program.

11. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

12. Because Defendants failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the nicotine /tobacco surcharge violates ERISA's anti-discrimination requirements. Its collection by HII was, and remains, unlawful.

13. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated HII Plan and HII Health Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent HII from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), Defendants, as fiduciaries of the Plan, have a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiffs, on behalf of themselves and the HII Plan and HII Health Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

**PARTIES**

14. Plaintiff Leo B. Brown is, and at all times mentioned herein was, an individual citizen of the State of Mississippi residing in Harrison County. Mr. Brown was an employee of HII from 2018 to 2022 and was a participant of the HII Plan and HII Health

Plan who paid the tobacco surcharge of over $660 annually in the form of additional premiums associated with both health and other insurance policies (critical illness insurance) offered through HII during the Class Period (March 11, 2020, to the time of judgment).

15. Plaintiff Richard Fowler is, and at all times mentioned herein was, an individual citizen of the State of Virginia residing in New Kent County. Mr. Fowler is a current employee of HII and a current participant of the HII Plan and HII Health Plan who paid the tobacco surcharge of over $660 annually in the form of additional premiums associated with both health and other insurance policies (critical illness insurance) offered through HII during the Class Period.

16. Plaintiffs are, or were, participants in the HII Plan and HII Health Plan pursuant to 29 U.S.C. § 1002(7) during the Class Period.

17. HII is the largest military shipbuilding company in the United States as well as a provider of professional services to partners in government and industry. HII has approximately 44,000 employees across the United States with nearly $12.5 billion in total revenue in 2025. Its corporate headquarters are located at 4101 Washington Avenue in Newport News, Virginia.

18. The HII Plan is a "wrap plan" that provides various benefits to HII employees. Within the HII Plan are "Component Plans" but Component Plans "are not considered separate plans for purpose of reporting requirements under ERISA . . . ." Component Plans include the HII Health Plan and the Critical Illness Insurance.

19. At all times relevant to this lawsuit, HII sponsored, maintained, and managed the HII Plan and its Component Plans, which were available to HII employees and their dependents.

20. At all times relevant to this lawsuit, the Committee acted as the HII Plan and its Component Plans' Plan Administrator and named fiduciary.

21. Recently filed public documents show the HII Health Plan has over 36,000 active participants as of December 31, 2025. The Plan is an employee benefit plan subject

to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

22. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 29 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

23. This Court has personal jurisdiction over Defendants because HII is registered and headquartered in this District, and Plaintiffs' claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to its activities and conduct concerning Plaintiffs and the Class in the State of Virginia.

24. Venue is proper in this District under 28 U.S.C. § 1132(e)(2) because this is the District in which Defendants have their principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendants conduct business and can be found in this District and the HII Plan is administered in this District.

## BACKGROUND

### I. ERISA'S PROHIBITION ON PREMIUM DISCRIMINATION AND THE NARROW WELLNESS PROGRAM EXCEPTION

25. As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA §

6

702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

26. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

27. Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments of Labor, Health and Human Services, and Treasury (the "Departments") to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182 and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

28. In 2006, the Departments issued regulations through the notice-and-comment rule-making process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations"). Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. §

2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

29. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "**must be satisfied** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.  *See Cunningham v. Cornell Univ., supra*.

30. Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . ." (emphases added)).

31. Only by satisfying all of the criteria can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* As one court concluded, regarding an employer's obligation to satisfy the regulatory criteria

8

in a tobacco surcharge case: "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Co.*, No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at \*28 (D. Minn. July 29, 2025).

32. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) <u>Frequency of opportunity to qualify</u>: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) <u>Size of reward</u>: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) <u>Reasonable design</u>: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) <u>Uniform availability and reasonable alternative standards</u>: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv).  This includes a requirement that "the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who

9

does not meet the initial standard….” *Id.*

(e) <u>Notice Requirement</u>: “The plan must disclose in all plan materials describing the terms of the program the availability of other means of qualifying for the [full] reward.” Final Regulations, 33159 (emphasis added).

33. For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed “in ***all*** plan materials describing the terms of” the program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe sur-charges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer *must* disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard *and a statement that recommendations of an individual's personal physician will be accommodated*. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

34. The Departments explained that documents that merely “mention” a program, with-out describing its terms, need not include the notice. However, <u>any</u> plan materials that reference a premium differential based on tobacco use or other health-contingent standard <u>must</u> contain the required disclosure. Final Regulations, 33166 (“a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent

wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

35. These requirements exist precisely to prevent employers from including these disclosures in some plan materials but then excluding that information from materials that are actually sent to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

36. Defendants impose a premium differential without providing the required notice disclosures in many of the participant-facing communications sent to participants, failing to notify participants of all the avenues available to them to avoid the surcharge.

## II.    DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI DIS-CRIMINATION RULE.

37. On its face, the HII tobacco surcharge violates ERISA because Defendants fail to comply with the statutory and regulatory notice requirements.

38. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

39. Defendants' tobacco surcharge violates this provision. Plaintiffs and all others similarly situated were required to pay an additional premium or contribution per year based on a

11

"health status-related factor" — their use of tobacco products. Plaintiffs, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

40. Specifically, Defendants impose an unlawful tobacco surcharge on employees and their beneficiaries (*e.g.*, spouses/domestic partners) who are enrolled in the HII Health Plan and have used tobacco products within the last six months.

41. All U.S. benefits-eligible employees (and their covered spouses/domestic partners, where applicable) who have used tobacco products within six months pay higher rates at least under the following programs in the HII Plan: (1) HII Health Plan; and (2) Critical Illness Insurance.

42. Under the HII Health Plan, a "tobacco user" (for a plan year) is any person who has used any type of tobacco product (i.e., smoked a cigarette or ever used any other tobacco product such as a cigar, pipe, vape, hookah, e-cigarette, clove cigarette or any form of smokeless tobacco, including chewing tobacco, oral nicotine pouches, dip or snuff), regardless of the frequency (or infrequency) of the use, at any point in time in the six months preceding each annual Plan enrollment.

43. If HII employees have used any tobacco product within six months, they pay an additional $55 per month (or $660 per year) under the HII Health Plan. If the employee's covered spouse/domestic partner also uses tobacco, they will pay an additional $55 per month (or $660 per year) under the HII Health Plan. If both the employee and the covered spouse/domestic partner indicate they are tobacco users, the surcharge would be $110 per month (or $1,320 per year).

44. When employees enroll as newly eligible employees or during a subsequent annual enrollment period in the HII Health Plan, they are presumptively treated as tobacco users unless

12

they explicitly declare (and re-declare, every single year) that they are tobacco-free under the Plan's strict definition.

45. The status they report remains in effect, even if the employee later changes it, until the next January 1 or July 1 after the change is made.

46. Only after employees (and/or their covered spouse/domestic partner) have been tobacco-free for six months or "successfully completed" the tobacco cessation program by the applicable deadline before July 1 of the year, will they potentially be eligible for lower non-tobacco user rates.  In the meantime (that is, until January 1 or July 1), they will continue paying the higher "tobacco user" rates. In other words, any relief from the tobacco surcharge is only prospective, and has a waiting period before it goes into effect.

47. Employees are able to receive more information regarding the opportunity to update their tobacco user status during the annual benefits enrollment period by accessing the appropriate website.

48. Under this tobacco surcharge program, Plaintiffs paid $660 a year for each year they were in the Plan during the Class Period, resulting in thousands of dollars paid to HII by Plaintiffs to maintain health insurance.

49. A tobacco surcharge is also imposed on tobacco users who opt into the Critical Illness Insurance coverage. This surcharge varies widely based on employee demographic factors such as age and marital status – for example, HII documents reflect that, for single employees under 25, the tobacco surcharge is $1.31 per month in 2025-2026. For a 65 year old employee plus family, the monthly surcharge is $105.85.

50. Plaintiffs chose to enroll in the Critical Illness Insurance coverage during the Class Period, and paid the higher "tobacco user" surcharge rate.

51. During this period, Defendants controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. On information and belief, rather than placing these funds in a trust account, HII retained the amounts collected as part of its own assets (although discovery is needed to confirm).

52. The Plan requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## III.   DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A.   LACK OF REASONABLE ALTERNATIVE STANDARD.

53. Defendants failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, being tobacco-free under Defendants' strict definition.

54. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the *full reward* once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program.

55. ERISA offers a limited exception to its general rules forbidding discrimination based on health status, by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

14

56. This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, a smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

57. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

58. To qualify under ERISA, there are three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "in *all* plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

59. These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

15

60. Crucially, *every one* of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

61. Defendants' tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard. It also does not satisfy the requirements because it did not provide notice of a reasonable alternative standard. As a result, it cannot meet the elements of this affirmative defense.

62. HII references a tobacco cessation program one time in its 31-page HII Benefits Guide as part of its wellness initiative. The guide's tobacco cessation program is objectively insufficient to explain the process by which employees and their spouses/domestic partners can avoid or remove the surcharge retroactively. Specifically, the guide mentions that participants can "successfully complete a tobacco cessation program" but does not provide any information on what it means to "successfully complete" such a program, or what type of program qualifies, and fails to inform the participant that the surcharge will be removed only on a prospective basis (after a waiting period), not for the entire plan year, as required.

63. This means participants who become tobacco-free partway through the plan year or who complete a smoking cessation program can avoid future surcharges starting the *next* January or July, but are not retroactively reimbursed for any surcharges already paid in that Plan year. This practice violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard.

64. Defendants, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. On information and belief, Defendants withhold

16

the amount of the surcharge from participants' paychecks and deposit these funds into HII's own accounts, rather than into a trust account (although discovery is needed to confirm).

65. By depositing these ill-gotten gains into their own accounts, Defendants have dealt with assets of the Plan for their own interests, in violation of ERISA. Defendants have a fiduciary responsibility to ensure that these funds are used to support coverage for employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendants have increased HII's own bottom line allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

66. Defendants' failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

67. Plaintiffs did not complete the tobacco cessation program because they were not adequately notified of the program. Even if Plaintiffs had received the necessary compliant notifications of the reasonable alternative standard (which they did not), they would have not received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

68. Additionally, because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendants' wellness program fails to provide reasonable alternative

standards and fails to comply with the requirement to make available the "full reward" to participants.

69. In other words, even employees who complete a tobacco cessation program can only avoid the surcharge on a go-forward basis, after a waiting period, and are not eligible for retroactive reimbursement for surcharges already paid during the plan year. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

**B.  LACK OF NOTICE OF REASONABLE ALTERNATIVE STANDARD.**

70. ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in *all* plan materials. Defendants' plan documents fail to adequately communicate this option or only provide partial notice by specifying that quitting tobacco can avoid the surcharge only prospectively, in violation of ERISA's notification requirements.

71. The regulations require plans and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), *including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E).

72. Defendants do not include adequate notification in all HII Health Plan materials. As discussed above, the HII Benefits Guide only once refers to "tobacco cessation program," and it fails to notify participants of the availability of a reasonable alternative standard that would

eliminate the tobacco surcharge for the entire plan year, in violation of ERISA, and does not state that the reasonable alternative standard can be met through accommodation of a personal physician recommendation.

73. HII Health Plan materials do not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided prospectively, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

74. For instance, HII Benefits Guide for 2025-2026, on a small section of one page, contains a section titled "Tobacco-Free" that does not provide any information that (1) tobacco surcharge reimbursement will be paid retroactively for all surcharges imposed in the current Plan year when the tobacco cessation program is completed, or (2) that those standards may be waived or avoided by providing a personal physician recommendation. Moreover, it simply states that an employee who "successfully completes" a tobacco cessation program "*can apply* for 'tobacco-free' preferred rates" – not that they will be granted. It does not even provide a website where participants could find out additional information about the tobacco surcharge or the tobacco cessation program.

75. Additionally, to be deemed a lawful wellness program, the regulations provide sample notification language. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you

19

wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

76. Much of this language, including the ability to "earn the same reward by different means" and the fact that the HII Plan will "work with you . . . [and] with your doctor," is missing from the Plan's materials distributed to the Plan's participants. Instead, the Summary Plan Description ominously refers to a "required … verification from a personal physician" proving that "a health factor makes it unreasonably dangerous or medically inadvisable" – a materially stricter standard than allowed by the regulations.

77. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01, 33166.

78. None of the Plan documents provided to Plaintiffs or the Class in a written form, or digitally/electronically, disclose a means by which a participant could either receive the "full reward" for the tobacco surcharge for the entire Plan year, or a manner to waive or work with the individual (including via accommodation of recommendation from the individual's personal physician) regarding how their tobacco use may be accommodated. Nor do they present specific contact information for the person or persons who can assist with determining the availability of any reasonable alternative beyond a tobacco cessation program.

79. As a result, all of the HII Health Plan materials, as required by the wellness plan safe-harbor, do not provide the required notice of the scope and nature of the tobacco surcharge program available to employees.

80. Because HII and the Committee have not complied with the requirement to provide notice of the availability and scope of the reasonable alternative standard in *all of the Plan's communications* by which a Plan participant could avoid the tobacco surcharge (including

20

through a recommendation by a personal physician) and receive a full reward, the tobacco sur-charge program is unlawful and the surcharge assessed to the Plaintiffs and Class must be re-turned to them for the entire Class Period.

## CLASS ACTION ALLEGATIONS

81. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

82. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

83. In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful HII tobacco surcharge. Plaintiffs seek to certify, and to be appointed as representa-tives of, the following Class:

> All persons in the United States who paid Huntington Ingalls' tobacco surcharge in connection with the Huntington Ingalls Industries Group Health Plan and Huntington Ingalls Industries Group Benefits Plan at any time from six years prior to the filing of the Complaint to the present.

84. Plaintiffs seek to certify, and to be appointed as representatives of, the following Subclass:

> All persons in the United States who paid Huntington Ingalls' tobacco surcharge in connection with Critical Illness Insurance within the Huntington Ingalls Industries Group Health Plan and Huntington Ingalls Industries Group Benefits Plan at any time from six years prior to the filing of the Complaint to the present.

85. Excluded from the Class and Subclass are the Court and its officers, employees and relatives; HII and its subsidiaries, officers, directors, and the Plans' fiduciaries; and

21

governmental entities.

86. The Class and Subclass include tens of thousands of members and are so large that joinder of all members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

87. There are questions of law and fact common to this Class and Subclass pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include but are not limited to the following:

   a. Whether HII's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

   b. Whether HII's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

   c. Whether HII can meet every element of its statutory affirmative defense for operating a compliant wellness program;

   d. Whether all of the HII Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

   e. Whether HII, in its discretionary fiduciary capacity of managing the HII Plan, breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

88. Plaintiffs' claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by HII – its collection of an unlawful tobacco surcharge – and are based on the same legal theories.

89. Plaintiffs will adequately represent the Class and Subclass pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the Class period, have no interests that conflict with the Class and Subclass, are committed to the vigorous

22

representation of the Class, and have engaged experienced and competent lawyers to represent the Class and Subclass.

90. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning the discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan which would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

91. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class and Subclass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

92. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

93. Plaintiffs' claims arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

94. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

95. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings

23

suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

96. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

97. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

98. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

<u>**FIRST CLAIM FOR RELIEF**</u>
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard Against HII**

99. Plaintiffs restate paragraphs 1-98 above as if fully set forth herein.

100. To enroll in the HII Plan, Plaintiffs, class members, and their spouses/domestic partners were required to pay a tobacco surcharge in the amount of $660 per Plan year. To enroll in the HII Plan's Critical Illness Insurance, Plaintiffs, class members, and their spouses/domestic partners were required to pay a tobacco surcharge of varying amounts depending on their demographic factors.

101. HII's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

    a.   The HII Plan did not allow participants an alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program;

b. Even a tobacco user who enrolled in and completed a tobacco cessation program would still have the surcharge deducted from their pay going forward, until the following January 1st or July 1st;

c. A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $660 reduction per year in premium costs to maintain medical coverage (or a similar reduction of the critical illness premium); and

d. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

102. HII cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

103. HII's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

104. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

105. Plaintiffs and class members were required to pay an illegal fee, and HII collected that fee from them in violation of the law. Equity requires that those funds be returned.

106. Equity also requires that the HII Plan be operated in conformance with the statutory safe-harbor for wellness programs.

<u>**SECOND CLAIM FOR RELIEF**</u>
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice Against HII**

107. Plaintiffs restate paragraphs 1-98 above as if fully set forth herein.

108. To enroll in the HII Plan, Plaintiffs and Class members were required to pay a tobacco surcharge in the amount of $660 per year. To enroll in the HII Plan's Critical Illness Insurance, Plaintiffs, class members, and their spouses/domestic partners were required to pay a tobacco surcharge of varying amounts depending on their demographic factors.

109. HII's tobacco surcharge program is not and was not a permissible wellness program, because HII did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the plan documents provided to Plaintiffs or Class members in a written form, or digitally on the computer, provided a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated.

110. HII therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

111. HII's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

112. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

113. Plaintiffs and Class members were required to pay an illegal surcharge, and HII collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiffs and Class members.

114. Equity also requires that the HII Plan be operated in conformance with the

26

statutory safe-harbor for wellness programs.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty Against the Committee**

115. Plaintiffs restate paragraphs 1-98 above as if fully set forth herein.

116. At all times relevant to this lawsuit, the Committee was the administrator of the HII Plan and HII Health Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the HII Plan and HII Health Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the HII Plan and HII Health Plan.

117. The Committee breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

118. As a result of the imposition of the tobacco surcharge, the Committee allowed HII to enrich itself at the expense of the Class Members, thereby allowing HII a windfall.

119. The Committee breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the HII Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. See 29 U.S.C. § 1104(a)(1)(A).

120. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, the Committee is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge

all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust of all profits it acquired through its violations alleged herein and which it made through use of assets of the plan – along with such other equitable or remedial relief as is proper.

121.   Plaintiffs are authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**FOURTH CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Prudence Against the Committee**

122.   Plaintiffs restate paragraphs 1-98 above as if fully set forth herein.

123.   ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…" 29 U.S.C. § 1104(a)(1)(B). The duty of prudence focuses on the thoroughness of a fiduciary's investigation before making a decision and asks "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular" decision. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021).

124.   The Committee breached its fiduciary duties by failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge on Plaintiffs and other Plan participants and beneficiaries.

125.   The Committee failed to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge under ERISA and the PHSA.

126.   These fiduciary violations caused injury to Plaintiffs and other Plan participants and beneficiaries who were required to pay unlawful surcharges as a direct result of the

28

Defendants' imprudent and insufficient investigation and analytic process.

127.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109, the Committee is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust of all profits it acquired through its violations alleged herein and which it made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

128.    Plaintiffs are authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**FIFTH CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Failure to Monitor Against HII**

129.    Plaintiffs restate paragraphs 1-98 above as if fully set forth herein.

130.    Defendant HII had the authority to appoint and remove members of the Committee or individuals responsible for the actions alleged herein, and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

131.    HII had a duty to monitor those individuals on the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties in accordance with ERISA's exacting standards.

132.    The Committee had a lawful duty to ensure that those individuals possessed the needed qualifications and experience to carry out their duties (or used qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis; and reported regularly to HII.

133.   The disloyal and imprudent manner in which the fiduciaries handled the nicotine / tobacco surcharge inferentially establishes that Defendant HII breached its duty to monitor those fiduciaries in accordance with its obligation to monitor, and its ultimate obligation to the Plan participants and beneficiaries.

134.   As a result of the breaches of the duty to monitor, the Plaintiffs and other class members suffered millions of dollars of unreasonable and unnecessary monetary losses.

135.   Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendant HII is liable to restore to the Plan all losses caused by its failure to adequately monitor. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**WHEREFORE**, Plaintiffs request the Court enter judgment in their favor, both individually and on behalf of all participants and beneficiaries in the HII Plan, and award the following relief:

a. certifying a class action for Plaintiffs' ERISA claims and appointing Butler Curwood, Horan & Horan PLLC, Chirinos Law Firm PLLC, Bloom Legal, and Stiegler Law Firm LLC, as Class counsel;

b. requiring HII to reimburse all participants who paid the tobacco surcharges from March 11, 2020, through the present plus interest;

c. requiring HII to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining HII from collecting tobacco surcharges until HII revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by HII as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiffs and members of the Class can make claims for benefits;

f. requiring HII to disgorge all unjust enrichment or profits received as a result of

fiduciary breaches committed by it with regard to the tobacco surcharge program for which it is liable;

g.  ordering HII to provide all accountings necessary to determine the amounts HII must make good to the HII Plan and to plan participants and beneficiaries;

h.  imposing the equitable remedy of surcharge and requiring HII to return all funds it derived from the illegal tobacco surcharge program;

i.  removing the fiduciaries who have breached their fiduciary duties and enjoining them from future ERISA violations;

j.  awarding Plaintiffs' counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action;

k.  ordering the payment of interest to the extent it is allowed by law; and

l.  granting any further relief that the Court may deem just and equitable.

March 12, 2026                                      Respectfully submitted,

/s/ Paul M. Falabella
Zev Antell (VSB No. 74634)
Paul M. Falabella (VSB No. 81199)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: zev@butlercurwood.com
Email: paul@butlercurwood.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos*
20283 State Road 7, Ste 592
Boca Raton, FL 33432
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

**STIEGLER LAW FIRM LLC**
Charles J. Stiegler*
318 Harrison Ave., #104
New Orleans, La. 70124
Telephone: (504) 267-0777
charles@stieglerlawfirm.com

**BLOOM LEGAL LLC**
Seth J. Bloom*
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
Email: sjb@bloomlegal.com

**HORAN & HORAN, PLLC**
M. Kevin Horan*
Bradley D. Daigneault*
1500 Gateway
P.O. Box 2166
Grenada, MS 38902
Telephone: (662) 226-2185
Email: horanmain@horanandhoranlaw.com


*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and Proposed Class*