**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**LEO B. BROWN and RICHARD FOWLER,
Individually and as Representatives of a
Class of Participants and Beneficiaries on
Behalf of the Huntington Ingalls Industries,
Inc. Group Benefits Plan and Huntington
Ingalls Industries Health Plan**

       **Plaintiffs,**

**v.**                                      **Case No. 4:26-cv-34**

**HUNTINGTON INGALLS INDUSTRIES, INC.
and HII ADMINISTRATIVE COMMITTEE**

       **Defendants.**

**PLAINTIFFS' MEMORANDUM OF LAW IN
<u>OPPOSITION TO MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................4

    A. The Parties and the Plan ...........................................................................................4

    B. The Plan's Deficient Tobacco Surcharge and Disclosures ....................................5

LEGAL STANDARD ...........................................................................................................7

    A. Legal Standard on Motion to Dismiss.....................................................................7

    B. Defendants' Motion Should Be Denied as Premature Because It Is Based on an Affirmative Defense........................................................................................................................7

    C. The Legal Standard for Imposing a Tobacco Surcharge .......................................10

    D. The Tobacco-Surcharge Legal Landscape.............................................................11

ARGUMENT .......................................................................................................................12

    I. The Critical Illness Insurance Policy Is Covered by ERISA .................................12

    II. Defendants' Limitation Argument Does Not Support Dismissal .........................13

    III. Defendants Cannot Show They Made the "Full Reward" Available ..................14

        A. The Full Reward Must Be Made Available to All Similarly Situated Participants .........14

        B. The Delayed Surcharge Reduction Drains the Word "Full" of Meaning, and the Weight of Authority Rejects It ...............................................................................................15

    IV. HII's Plan Materials Omit Required Disclosures ...............................................20

    V. Plaintiffs' Fiduciary Claims Should Proceed......................................................25

    VI. Plaintiffs Have Alleged a Failure to Monitor....................................................30

    VII. Any Dismissal Should Be Without Prejudice to the Right to Amend ..............30

CONCLUSION....................................................................................................................30

**<u>INTRODUCTION</u>**

Two judges from this District have previously considered – and squarely rejected – the very arguments Huntington presses in this Motion to Dismiss. *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882 (E.D. Va. 2025) (Novak, J.), and *Walker v. Leidos, Inc.*, No. 1:26-cv-00516, ECF No. 38 (E.D. Va. May 21, 2026) (Giles, J.)[1], denied similar motions to dismiss materially identical ERISA tobacco-surcharge claims. Defendants offer this Court no reason to depart from this well-reasoned majority position.

Those courts ruled as they did for a straightforward reason: ERISA forbids charging employees more for health coverage because of a health factor such as tobacco use, unless the employer satisfies every condition of a narrow wellness-program exception. 29 U.S.C. § 1182(b). Huntington did not satisfy those conditions, yet it charged thousands of tobacco-using employees $660 every year by withholding money directly from their paychecks, pay period after pay period, that Huntington had no authority to collect.

HII derides this case as one of "dozens" of tobacco-surcharge complaints, yet its motion cites only a handful of decisions from what it concedes is a well-developed national landscape. There is a reason for that – the legal landscape is overwhelmingly against it. The substantial majority of district courts, spanning at least eight federal circuits, have rejected the arguments advanced by Huntington here and denied motions to dismiss materially identical ERISA tobacco-surcharge complaints. The handful of contrary decisions are the outliers, and, as discussed below, are distinguishable. Ultimately, the motion to dismiss fails for the following reasons.

---

[1] In *Walker v. Leidos*, Judge Giles provided her reasons for denying the motion to dismiss from the bench, and later memorialized the ruling in a brief minute entry. The relevant hearing transcript is attached hereto as Exhibit B. Judge Giles' oral reasons begin on page 27 of that transcript.

The motion inappropriately asks the Court to resolve an affirmative defense on the pleadings. The Departments that wrote the wellness-program regulations described them, in the rulemaking itself, as "criteria for an **affirmative defense** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated." Final Regulations, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emph. added). That follows from the statute's structure: ERISA prohibits health-based premium differentials, 29 U.S.C. § 1182(b)(1), and permits them only if the employer satisfies the narrow exception's conditions, *id*. § 1182(b)(2)(B) — a prohibition-plus-exception framework in which the burden falls on the party invoking the exception. The Supreme Court recently confirmed that the employer invoking such an ERISA exception bears the burden of proving compliance with each and every element of that exception. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025). Plaintiffs need only plausibly allege that HII failed to satisfy one condition; they allege it failed several. Plaintiffs have more than satisfied Rule 8. Whether Defendants can ultimately carry their burden is a question for the decision-maker following full discovery, not a Rule 12 motion. That rule applies with special force where, as here, Defendants have not submitted the full and complete universe of plan documents over the relevant statutory time period.

Count I states a claim because the tobacco surcharge is substantively non-compliant. A tobacco surcharge may be permitted only if Defendants made the "full reward" available to all similarly situated participants who complete a wellness program (here, a tobacco cessation program). The statutory problem is straightforward. A participant who never uses tobacco pays no surcharge for the entire plan year. A participant who satisfies the alternative standard in October but receives no reimbursement for the nine months of surcharges already withheld has not received the same "full reward" Congress required; that participant has received only a partial reward. The

2

statute's use of the word "full" is what makes Huntington's prospective-only approach unlawful. The motion to dismiss concedes the facts that matter: that the Plan imposes a $55-per-month tobacco surcharge; that Plaintiffs paid those surcharges; and that an employee who completes a tobacco cessation program must continue paying the tobacco surcharge – sometimes for several *months* after completing the program. Defendants also concede that no retroactive refund of surcharges is ever offered, in direct contradiction to the Departments of Labor and Treasury's regulatory preamble.

Count II independently states a claim based on lack of sufficient notice. ERISA permits a tobacco surcharge only if the employer discloses the availability of a reasonable alternative standard in all plan materials describing the program, including a statement that recommendations of a participant's personal physician will be accommodated and contact information for obtaining the alternative. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). Defendants' own participant-facing materials, the very documents attached to the motion, prove the omission. They describe the surcharge, identify who must pay it, and explain how to avoid it, yet they omit the physician-accommodation statement and other mandatory disclosures. The omission removes the surcharge from the safe harbor, and the necessary proof comes from Defendants' own exhibits.[2]

Plaintiffs also sufficiently allege a breach of fiduciary duties of loyalty and prudence. Plaintiffs do not merely challenge the design of the HII Plan; they challenge Defendants' ongoing fiduciary administration of that program; an administration that omitted mandatory regulatory components required for a compliant reasonable alternative standard; failed to monitor and correct those deficiencies; and used participant-paid surcharge proceeds for HII's benefit, rather than for

---

[2] Defendants provide the Court with a limited subset of the full Plan Materials, as discussed below, in an apparent attempt to put their best foot forward. But even this self-serving slice of the Plan Materials falls short of ERISA's mandatory notice requirements.

the interests of the participants and beneficiaries. Those allegations are sufficient to overcome a motion to dismiss.

Once Defendants' attempt to invert the burden of proof is set aside, what remains is a Complaint plausibly alleging a facially discriminatory and non-compliant surcharge program that falls short of multiple conditions of a statutory safe harbor affirmative defense. Rule 12 does not permit Defendants to escape well-pleaded allegations that plan participants paid unlawful surcharges under a non-compliant program. The Court should deny Defendants' Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

### A.    The Parties and the Plan

Plaintiff Leo Brown is a former HII employee and participant of the HII Plan and HII Health Plan. He paid the tobacco surcharge of over $660 annually in the form of additional premiums associated with health and other insurance policies (including Critical Illness Insurance, or "CII"). Compl., Dkt. No. 1, ¶ 14. Richard Fowler is a current, and long-term, HII employee who paid (and continues to pay) the same tobacco surcharges. *Id.* at ¶ 15. Both Plaintiffs qualify as Participants in the HII Plan and HII Health Plan. *Id.* at ¶ 16. The deficiencies in Huntington's program were not unique to Plaintiffs. The tobacco surcharge applies identically to all employees in the HII Plan and HII Health Plan. *Id.* at ¶ 3.

At all times relevant to this lawsuit, the Committee acted as the Plan Administrator and named fiduciary for the HII Plan and its Component Plans. *Id.* at ¶ 20; *see also* HII Group Benefits Plan, Dkt. No. 24-3, § 7.01. Recently filed public documents show the HII Health Plan has over 36,000 active participants as of December 31, 2025. *Id.* at ¶ 21.

4

**B.**      **The Plan's Deficient Tobacco Surcharge and Disclosures**

The HII Health Plan imposes higher premium costs on "tobacco users," which it expansively defines as "any person who has used any type of tobacco product (i.e., smoked a cigarette or ever used any other tobacco product such as a cigar, pipe, vape, hookah, e-cigarette, clove cigarette or any form of smokeless tobacco, including chewing tobacco, oral nicotine pouches, dip or snuff), regardless of the frequency (or infrequency) of the use, at any point in time in the six months preceding each annual Plan enrollment." *Id.* at ¶ 42, *see also* Dkt. No. 24-2, HII Benefits Guide ("Benefits Guide") at p. 9. Failure to certify as "tobacco-free" results in an additional $55 monthly payment. *Id.* at ¶ 43. Thus, a participant or beneficiary who certifies that he or she is tobacco-free avoids this $55 monthly cost for every month which he or she is enrolled in the plan.

The "wellness program" at issue here involves tobacco cessation. A participant can change his tobacco status via an online portal if, for example, he completes a tobacco cessation program during the year. However, the lower rates will not immediately go into effect, and that participant will continue paying a tobacco surcharge until the next January 1st, or July 1st. *Id.* at ¶ 46, *see* Benefits Guide at p. 9. Thus, there is a delay between when employees (and/or their covered spouse or domestic partner) successfully complete a tobacco cessation program, and when they will potentially be eligible for lower non-tobacco user rates. In the meantime (that is, until the next January 1 or July 1), they continue paying the higher "tobacco user" rates. *Id.* at ¶ 46. In other words, any relief from these higher "tobacco user" rates is prospective only, includes no retroactive reimbursement for previously paid surcharges, and includes a waiting period which could last for several months before obtaining the "reward" of a lower premium.

ERISA regulations also require strict disclosures for any Plan that seeks to impose a tobacco surcharge. HII's participant-facing materials omit these mandatory disclosures. In particular, the HII 2025-2026 Benefits Guide (attached by Defendants as Dkt. No. 24-2) wholly fails to comply with regulatory disclosure requirements surrounding the tobacco surcharge. This Benefits Guide explains that there is a tobacco surcharge, that the surcharge is $660 per year, and that "tobacco-free" status only goes into effect on January 1st or July 1st. *See* Dkt. No. 24-2 at p. 9, "Tobacco-free: Good for you and your wallet." It generally states that, if you "complete a tobacco cessation program during the plan year, you can apply for 'tobacco-free' preferred rates." *Id*. No further information is provided regarding what a tobacco cessation program is, what programs do (or do not) qualify for the lower rates, or whether any reasonable alternative standards may be available. Importantly, it also states nothing about accommodating the recommendations of a participant's personal physician.

The Benefits & Wellness Non-Represented Orientation Packet provides even less information (HII did *not* include the orientation packet with its motion, but it is attached hereto as an Exhibit A). This document states, in the section setting forth the chart of "Medical Plans Non-Tobacco Rates," that the "Tobacco-User rate is $660 more annually." *See* Ex. A at p. 7. Nothing in this packet explains what qualifies as a "tobacco user" vs "non-tobacco," and there is no reference whatsoever to any tobacco cessation program or possible alternative standard.

Thus, as set forth in detail below, Defendants' tobacco surcharge program is both substantively flawed, for failure to provide a "full reward," and procedurally deficient, because Defendants failed to provide the mandatory notices in all Plan materials. It is therefore non-compliant under 29 U.S.C. § 1182.

6

## LEGAL STANDARD

**A.      Legal Standard on Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Blackburn v. A.C. Israel Enters.*, 2023 U.S. Dist. LEXIS 127517, at \*26-27 (E.D. Va. July 24, 2023) (*quoting Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept Plaintiffs' well-pleaded factual allegations as true, draw all reasonable inferences in Plaintiffs' favor, and view the complaint in the light most favorable to Plaintiffs. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

An ERISA plaintiff need not "rule out every possible lawful explanation for the conduct he challenges," *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 108 (2d Cir. 2021), and courts remain "cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," *id*. at 107 (citation omitted).

**B.      Defendants' Motion Should Be Denied as Premature Because It Is Based on an Affirmative Defense**

Contrary to Defendants' arguments, the wellness-program exception is an affirmative defense that HII must establish, not a pleading burden Plaintiffs must overcome. The Supreme Court has confirmed in the ERISA exemption context that "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Cunningham,* 604 U.S. at 704 (citation

7

omitted). The Departments said the same, describing the regulatory criteria here as the elements of "an affirmative defense." Final Regulations, 78 Fed. Reg. at 33160.

That burden-allocation principle is particularly important at the pleading stage. Plaintiffs' claim is straightforward: ERISA generally prohibits charging higher premiums based on a health-status-related factor such as tobacco use. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). Huntington imposed such a surcharge. The wellness-program exception appears in a separate statutory subsection and is available only if Huntington can establish compliance with each of five required conditions. *See* 29 U.S.C. § 1182(b)(2); 42 U.S.C. § 300gg-4(b)(2)(B), (j)(3).

Defendants' contrary argument is based on a strained interpretation of the statutory structure. As the Supreme Court recognized, "when a statute has exemptions laid out apart from the prohibitions, and the exemptions expressly refer to the prohibited conduct as such, the exemptions ordinarily constitute affirmative defenses that are entirely the responsibility of the party raising them." *Cunningham,* 604 U.S. at 701 (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91, 95, 128 S. Ct. 2395, 171 L. Ed. 2d 283 (2008), internal quotation marks omitted). In *Cunningham*, the general rule regarding prohibited transactions is set out in 29 U.S.C. § 1106. The exemptions are set forth in 29 U.S.C. § 1108. This, as the Supreme Court acknowledged, fits squarely within the "exemptions laid out apart from the prohibitions" language from *Meacham.*

Defendants attempt to distinguish *Cunningham's* binding rule on the faintest of grounds. Defendants claim that, in *Cunningham*, the exemptions are set forth in a different statutory section. Here, the general rule is set forth in 29 U.S.C. § 1182(b)(1), and the list of exemptions is set forth in 29 U.S.C. § 1182(b)(2); in other words, the exemptions are included in a different *sub*section. Defendants therefore seek to place some metaphysical distinction between statutory sections and

8

statutory subsections and effectively argue that only a different section will create an affirmative defense. This reed-thin distinction is wholly absent from the Supreme Court cases cited above. Unsurprisingly, the Motion to Dismiss does not cite a single case, treatise, law review article, or any other binding or persuasive authority, making this proposed distinction between sections and subsections in the context of affirmative defenses. Indeed, binding Supreme Court law directly forecloses Defendants' argument. *Meacham,* quoted above, involved § 623(a) of the Age Discrimination in Employment Act, an exemption to which is set forth in subsection § 623(f) of that same Act. *Meacham,* 554 U.S. at 91. This, the Court held, qualified as an affirmative defense. *Id.* at 92. Thus, Defendants' proposed section/subsection distinction is foreclosed by binding Supreme Court precedent.

In short, the clear language and structure of the Act confirm that the wellness-program exception is precisely that; an exception, and therefore an affirmative defense for the Defendants to prove. The Supreme Court made abundantly clear in *Cunningham* that Plaintiffs are not required to "plead around" these types of potential affirmative defenses in ERISA cases. The *Cunningham* rule applies with full force here.

Huntington's burden also cannot be carried on this record, because it has placed only a curated slice of the governing documents before the Court. Although the relevant period reaches back to at least 2020, Huntington attaches only the Plan effective July 1, 2022 and later amendments, a 2025 SPD, and the 2025–2026 Benefits Guide, *see* Dkt. Nos. 24-2, 24-3, 24-4, 24-5, 24-6 — and none of the documents that governed from 2020 through mid-2022. That gap is telling given the wave of surcharge suits that led many employers to amend their programs, and it means Huntington cannot establish safe-harbor compliance for the earlier years as a matter of law. At most, the omission entitles Plaintiffs to discovery. *See Moyer v. Gov't Emps. Ins. Co*., 114 F.4th

9

563, 568 (6th Cir. 2024) (ERISA plaintiff entitled to discovery where there are "legitimate questions about whether the defendant has provided a complete set of governing documents").

### C. The Legal Standard for Imposing a Tobacco Surcharge

ERISA and the Public Health Service Act generally prohibit a group health plan from charging an individual a greater premium or contribution than a similarly situated individual based on a health-status-related factor, including tobacco use. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). A plan may impose a premium differential only if it qualifies for the statutory exception for "programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

Congress did not leave that exception open-ended. The exception applies only if the plan satisfies each of five mandatory conditions established by statute and implemented through detailed regulations promulgated by the Departments of Labor, Treasury, and Health and Human Services (the "Departments"). 42 U.S.C. § 300gg-4(j)(3)(B)–(E); 29 C.F.R. § 2590.702(f)(4); *see* Final Regulations, 78 Fed. Reg. 33158 (June 3, 2013).

Two of those conditions are central here. The program must make the "full reward" available to all similarly situated individuals, including by way of a reasonable alternative standard available to any individual who does not meet the initial standard. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). The plan must also "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard," 42 U.S.C. § 300gg-4(j)(3)(E). These materials must include contact information and a statement that recommendations of a participant's personal physician will be accommodated, 29 C.F.R. § 2590.702(f)(4)(v). The Departments adopted these regulations under express congressional

10

delegation, 29 U.S.C. §§ 1135, 1191c; 42 U.S.C. § 300gg-4(n), through notice-and-comment rulemaking, and they have governed outcome-based wellness programs for more than a decade.

The Departments described these criteria not as elements of a plaintiff's claim but as the conditions of a defense. The Final Regulations "set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated." Final Regulations, 78 Fed. Reg. at 33160. If a program fails to satisfy any one of the conditions, the surcharge remains a discriminatory, health-based premium differential, and it is unlawful. *Id.*; 42 U.S.C. § 300gg-4(b)(1). When it comes to ERISA's mandatory regulatory requirements, "[a]ll means all . . . no matter how small the requirement may be." *Fisher v. GardaWorld Cash Serv. Inc.*, 2025 U.S. Dist. LEXIS 167251, at *21 (W.D.N.C. Aug. 27, 2025) (quoting *Chirinian v. Travelers Co.*, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025), denying motion to dismiss and explaining that "[t]o impose a tobacco surcharge on plan participants without running afoul of ERISA's antidiscrimination rules, [defendant] must satisfy 'all of the [regulatory] requirements' of an outcome-based wellness program under 29 C.F.R. § 2590.702(f)(4)").

### D.  The Tobacco-Surcharge Legal Landscape

Although tobacco-surcharge litigation is relatively recent, a substantial body of authority has now developed. The majority of courts to consider these claims have declined to dismiss allegations that a plan's tobacco-surcharge program failed to satisfy ERISA's wellness-program requirements, including claims concerning the "full reward" requirement, required participant disclosures, and fiduciary breaches. The majority position in this District and beyond is decidedly against Defendants as to each argument raised herein.

As cited and discussed below, Courts have denied dismissal of full-reward and retroactive-reimbursement claims, notice claims, and fiduciary breaches, including two recent decisions

11

arising out of this District. *See Bokma,* 783 F. Supp. 3d at 897 and *Walker v. Leidos*; *see also Trout v. Meijer, Inc.,* 2026 U.S. Dist. LEXIS 89941, at *14-25 (W.D. Mich. Apr. 23, 2026); *Leslie v. Rentokil N. Am., Inc.,* 2026 U.S. Dist. LEXIS 76558*, at* *23–27 (E.D. Pa. Apr. 8, 2026); *Hill v. XPO, Inc.*, 2026 U.S. Dist. LEXIS 69336, at *9, 36 (D. Conn. Mar. 31, 2026). Even *Buescher v. North Am. Lighting, Inc.*, a decision Defendants twice cite in their *favor*, denied dismissal of the plaintiff's notice claim. 791 F. Supp. 3d 873, 907 (C.D. Ill. 2025).

## **ARGUMENT**

### I.      **The Critical Illness Insurance Policy Is Covered by ERISA**

Defendants argue that the Critical Illness Insurance (or "CII") coverage is not an ERISA Plan or otherwise subject to ERISA. (Defs.' Mem. of Law in Supp. of MTD at 11). To the contrary, CII is an employee benefit plan selected by HII, offered and advertised by HII as an employer to its employees, and funded by regular withdrawals from employee paychecks, administered by Defendants. This is the very core of an ERISA-governed plan.

Defendants do not cite the statutory definition of an ERISA-covered benefit plan: "any plan, fund, or program which was heretofore or is hereinafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (a) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment…" 29 U.S.C. § 1002(1). This describes the CII program precisely. The HII 2025 Benefits Guide lists "Critical illness insurance" in a section titled "An overview of HII benefits" and describes CII coverage as follows:

> Critical illness insurance gives you a lump sum payment if you're diagnosed with a covered illness or disease. Use this money to pay for whatever you need, such as medical bills not covered by your health plan, mortgage and rent

12

payments, child care and more. You can also extend coverage to your spouse and/or children.[3]

CII therefore meets all three statutory criteria. Defendants selected the plan, include information regarding this benefit in the HII Benefits Guides and the new employee Orientation Packet, offer and advertise the benefit to employees, and employees pay through wage deductions which are managed and administered through HII. Defendants claim they do not administer the Plan but that is not the statutory test and, at this point in the case, that assertion merely presents a disputed issue of fact. The CII plan is intended for the purpose of providing benefits to HII participants or beneficiaries, specifically, in the event of a covered illness or disease. And the CII plan unquestionably qualifies as "benefits, in the event of sickness, accident, [or] disability" under the plain language of the statute. Moreover, the Complaint explicitly alleges that "HII sponsored, maintained, and managed" the plans at issue including the CII Plan. (Compl., Dkt. No. 1 at ¶ 19). At this stage, no more is (or can be) required.

HII focuses on the fact that CII is not explicitly listed as a Component Plan within the HII Plan documents. But that is not the applicable statutory test. (And, notably, HII has not presented the Court or the Plaintiffs with any underlying documents relating to the CII plan). Based solely on the allegations of the Complaint, accepted as true, Plaintiffs have adequately pleaded ERISA coverage over the CII plan for the purposes of overcoming a motion to dismiss.

## II.   Defendants' Limitation Argument Does Not Support Dismissal

Huntington contends that a four-year limitations period governs the statutory claims and bars any portion arising before March 12, 2022. (Defs.' Mem. of Law in Supp. of MTD at 12). Even accepting that period, the argument dismisses no claim. The surcharge is deducted anew each

---

[3] Dkt. #24-2, Defendants' Exh. B, at p. 21.

pay period under an annually re-administered program, so every deduction within four years of filing is a discrete, independently actionable violation that is plainly timely; at most, Huntington's argument potentially trims the damages period for Counts I and II, which is not a basis for dismissal. *See Chirinian,* 2025 U.S. Dist. LEXIS 144669*,* at \*16–17 (each tobacco surcharge "constituted an 'act' that gave rise to a claim"). Indeed, the very decision Huntington cites for the four-year period denied dismissal of materially similar notice claims. *See Trout,* 2026 U.S. Dist. LEXIS 89941*,* at \*14, \*24–25. And the argument has no bearing on the fiduciary-breach claims, which Huntington concedes are governed by ERISA § 1113's six-year period and which reach the surcharges deducted throughout the entire class period. Defs.' Mem. of Law in Supp. of MTD at 12; 29 U.S.C. § 1113. The precise recoverable period, if any limitation applies, is a damages question for a later stage, not the pleadings.

## III.    Defendants Cannot Show They Made the "Full Reward" Available

### A.  The Full Reward Must Be Made Available to All Similarly Situated Participants

Defendants argue that "Tobacco Surcharge Programs are not *Per Se* Prohibited." (Defs.' Mem. of Law in Supp. of MTD at 13). But Plaintiffs do not claim that there is any such *per se* prohibition. Plaintiffs *do* claim that the HII tobacco surcharge program is statutorily non-compliant, because HII charged higher premiums based on tobacco use without satisfying the statutory conditions that permit such a charge. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(j)(3). Count I turns on statutory text. Congress did not merely require that some reward be available through a wellness program. This statute explicitly and clearly requires that "[t]he full reward under the wellness program shall be made available to all similarly situated individuals," 42 U.S.C. § 300gg-4(j)(3)(D), and it defines a reward to include "the absence of a surcharge," *id.* § 300gg-4(j)(3)(A). Congress then directed the Departments to fill in the operational details, 29 U.S.C. §§

14

1135, 1191c; 42 U.S.C. § 300gg-4(n), and the Final Regulations did exactly that. Defendants have failed to satisfy the statutory full-reward requirement as defined by those Congressionally authorized regulations.

### B. The Delayed Surcharge Reduction Drains the Word "Full" of Meaning, and the Weight of Authority Rejects It

Defendants' argument ultimately depends on reading the word "full" out of the statute. Under Defendants' view, a participant who pays nine months of tobacco surcharges and then completes the alternative standard in October receives the same reward as a participant who paid no surcharge at all throughout the year. But Congress did not require that "a" reward be made available. It required that the *"full reward"* be made available. 42 U.S.C. § 300gg-4(j)(3)(D). A non-tobacco user pays no surcharge for the entire plan year. A participant who satisfies the alternative standard mid-year but receives no reimbursement for surcharges already collected has not received the same reward; that participant has received only a partial reward. The statutory text therefore favors Plaintiffs' reading before the Court ever reaches the Departments' regulations or interpretive guidance.

Defendants concede that, even if a Plan participant completes the tobacco cessation program mid-year, he or she must wait until the next January 1st, or July 1st, before becoming eligible for any relief from the ongoing tobacco surcharge, and that no rebate is ever offered. Thus, employees continue paying hundreds of dollars in tobacco surcharges even *after* they successfully complete a tobacco cessation program. Yet Defendants paradoxically claim that this somehow qualifies as the "full reward" that nonsmokers receive. Both the statutory text, and simple common sense, foreclose that interpretation.

A non-tobacco user, the statute's chosen comparator (*see* 42 U.S.C. § 300gg-4(b)(1)), pays *zero* surcharge for the entire year. An HII Health Plan participant who completes the tobacco

15

cessation program mid-year both (1) continues paying the tobacco surcharge until either January 1st, or July 1st, and (2) is reimbursed *nothing* for the preceding months in which he or she paid surcharges. That individual has surely not received the same, full reward; he or she has received a partial delayed reward. As *Wilson* explained, "if all that ERISA and its implementing regulations require is that participants who complete the program stop paying the surcharge in future pay periods," the statute "could have accomplished that objective merely by providing that the 'reward' must be made available[;] [t]he term 'full reward,' then, must entail something more than merely the absence of the surcharge." 2026 U.S. Dist. LEXIS 10099, at *25–26. Notably, the program in *Wilson* was considerably more employee-friendly than HII's program, as a participant in *Wilson* who completed the tobacco cessation program would begin to "pay the non-tobacco user rate on the first of the following month." *Id.* at *6. HII, by contrast, imposes a variable waiting period which, in some cases, could last up to 5 ½ months before the surcharge is removed.

In issuing the regulations, the Departments took the position that, not only should there be no waiting period, but a retroactive reimbursement is required in order to qualify as a "full reward." "[E]very individual participating in the program should be able to receive the full amount of any reward or incentive," Final Regulations, 78 Fed. Reg. at 33160, and the "same, full reward must be provided to [an] individual" who satisfies the alternative standard mid-year "as is provided to individuals who meet the initial standard for that plan year," *id*. at 33163. The Departments provide a concrete example: a participant who satisfies the alternative on April 1 must receive "the premium discounts for January, February, and March." *Id*. Defendants cannot dispute that the regulatory preamble contemplates "retroactive payment of the reward" in exactly these circumstances. Defs.' Mem. of Law in Supp. of MTD at 13. Courts have overwhelmingly agreed.

16

Most notably, in *Bokma v. Performance Food Grp., Inc.,* 783 F. Supp. 3d 882 (E.D. Va. 2025), Judge Novak addressed a plan which, upon completion of the tobacco cessation program, "mentions that the surcharge will be removed only on a prospective basis upon completion of Quit 4 Life, but not for the entire plan year." *Id.* at 889. This, the Court held, was simply insufficient to qualify as a full reward. In his ruling Judge Novak adopted, in pertinent part, the analysis in *Mehlberg v. Compass Grp. USA, Inc.*, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025), which held that "the addition of the qualifying word 'full' before 'reward' in both the DOL regulation and Section 2705 of the PHSA removed any doubt that the 'reward' was intended to apply retroactively." *Bokma,* 783 F. Supp. 3d at 904-905.

Judge Giles recently reached the same conclusion in ruling from the bench, finding that "full reward means just that. And if you are giving a portion of it and not the whole thing for the term year, then that is not a full reward." *Walker v. Leidos, Inc.*, No. 1:26-cv-00516 (E.D. Va. May 21, 2026) (Tr. of Mot. Hr'g 28:22–24, 29:12–13). Notably, Judge Giles found that there was no need to decide whether or not to give *Auer* deference to the Departments' interpretation, as the text of the statute was sufficiently clear on its own. *Id.* at 28:24-29:11.

Defendants attempt to confuse the issue by referring to a separate regulatory provision, which requires plans to provide at least one opportunity per year to qualify for the applicable reward. (Defs.' Mem. of Law in Supp. of MTD at 17). Defendants argue that, because they give two opportunities a year (January 1 and July 1), the Plan is compliant. This argument improperly conflates two separate issues – how frequently the wellness program must be offered (at least once a year, 29 C.F.R. § 2590.702(f)(4)(i)), and what reward must come with it (the "full reward," 29 C.F.R. § 2590.702(f)(4)(iv)). A fully compliant wellness program must comply with *both* of these requirements, as well as all other requirements set forth in the statutes and regulations. HII cannot

17

pick and choose which regulatory requirements it complies with. Nor can Defendants argue that, because they comply with § 2590.702(f)(4)(i), they are somehow excused from complying with § 2590.702(f)(4)(iv).

Defendants then turn to a fallback position: even if the delayed removal of the surcharge may be unlawful, the law does not require retroactive reimbursement of previously paid surcharges. (Defs.' Mem. of Law in Supp. of MTD at 17-20). Again, the weight of authority is clearly against HII: "Full reward means just that." *Walker v. Leidos*, Tr. at 28. Put simply, a smoker who completes the tobacco cessation program must receive the "full reward" given to a non-smoker – that is, a full Plan year's worth of favorable non-tobacco rates. This is consistent with the plain language of the statute and regulation, and also in perfect harmony with the underlying statutory intention: convincing employees to engage in wellness programs such as tobacco cessation through the use of a "full reward" as a carrot. Offering a grudging, partial, delayed reward not only violates the statutory text, it defeats the whole Congressional intent in including this provision – the desire to encourage employees to participate in wellness programs like a tobacco cessation program.

Defendants concede, reluctantly, that the *Bokma* decision from this District rejected each argument they raise in this motion. (Defs.' Mem. of Law in Supp. of MTD at 19). They make several attempts to distinguish *Bokma*, or explain it away, but none are persuasive. First, Defendants claim that in *Bokma* "participants did not have the opportunity to satisfy the reasonable alternative standard before the start of each plan year and, due to practical limitations in the program's structure, could only qualify for tobacco-free rates if they completed a tobacco cessation program during the plan year." (Defs.' Mem. of Law in Supp. of MTD at 19). It is unclear what Defendants are referring to. Nothing in *Bokma* explicitly states that the plan was structured in this

18

manner. At the very least, if this is true, it was not a decisive factor in the court's ruling. By definition, *any* date is always within one plan year and "before the start" of the next plan year. In any event, Plaintiffs' position herein is precisely the same as the Plaintiffs' position in *Bokma*: that ERISA imposes a "requirement that plans provide participants with the 'full reward' upon completion of a program, which may occur at any point during the plan year." *Bokma,* 783 F. Supp. 3d at 905. Defendants now claim that "HII's employees are entitled to receive a full year of tobacco-free rates" when they complete a tobacco cessation program, but this is simply untrue. Their "reward" is prospective only and involves a lengthy delay before it goes into effect; in no respect do they receive a "full year" of tobacco-free rates like non-smokers do.

HII then argues that *Bokma* inappropriately applied *Auer* deference to the Departments' finding regarding retroactive reimbursement because of the "anti-parroting" doctrine set forth in *Gonzales v. Oregon*, 546 U.S. 243 (2006). To be clear, Plaintiffs do not believe the Court must reach the deference issue, as they simply ask the Court to give the statutory phrase "full reward" its natural, everyday reading. A participant who completes a tobacco cessation program should receive the full, complete reward, not a partial, delayed reward (which is all that HII offers). The Departments' guidance is, clearly, supportive of this position, but it is not strictly necessary as Plaintiffs present the most natural reading of the statute's plain text. In any event, this case does not present a traditional case of "parroting," where a regulation simply copied the text of a statute. To the contrary, here the *statute* actually copied the *regulation*. The phrase "full reward" originated from the DOL 2006 wellness program regulations, and this language was adopted "almost verbatim" into the Affordable Care Act. Thus, it was Congress who "parroted," and therefore adopted, the Departments' language and, implicitly, the Departments' interpretation of that language. *See Waggoner v. Carle Found.*, 2025 U.S. Dist. LEXIS 277322, at *60 (C.D. Ill. Sep.

19

15, 2025). By adopting the regulatory language, it stands to reason, Congress also intended to adopt the previously established regulatory interpretation. Even if the Court finds *Auer* deference is not appropriate, this Court should still apply persuasive *Skidmore* deference[4] to the Departments' thoughtful implementation of the governing statute.

The weight of caselaw, as cited above, also supports Plaintiffs' position. *Leslie* denied dismissal, holding that the only reading giving effect to "full" requires a refund of surcharges paid earlier in the plan year. 2026 U.S. Dist. LEXIS 76558, at *23–27. *Waggoner* agreed that "the full reward is not 'available' in any realistic way to those completing the reasonable alternative standard unless there is retroactive reimbursement." 2025 U.S. Dist. LEXIS 277322, at *51. So too *Baker v. 7-Eleven Inc.,* 2026 U.S. Dist. LEXIS 33855, at *12–13 (N.D. Tex. Feb. 19, 2026); *Mehlberg,* 2025 U.S. Dist. LEXIS 84589, at *14–16; *and Hill,* 2026 U.S. Dist. LEXIS 69336, at *9, *36. Indeed, *Mehlberg* later certified a class on these very statutory claims. *Mehlberg v. Compass Grp. USA, Inc.*, 2026 U.S. Dist. LEXIS 84260, at *3-4, 7-10 (W.D. Mo. Apr. 9, 2026).

As pleaded, the HII tobacco surcharge program offers only prospective, delayed relief and no retroactive reimbursement for surcharges already paid. That is the opposite of the "full reward." At the pleading stage these allegations are enough.

## IV.     HII's Plan Materials Omit Required Disclosures

Defendants' notice violations provide a separate and independent basis to deny the motion to dismiss. In Count II, Plaintiffs allege that HII failed to give adequate notice, as required by the

---

[4]In *Skidmore v. Swift*, 323 U.S. 134, 140 (1944), the Supreme Court noted that it gives "considerable and in some cases decisive weight to … interpretative regulations [which] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

statute and regulations: "HII did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the plan documents provided to Plaintiffs or Class members in a written form, or digitally on the computer, provided a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated." (Compl. ¶ 109).

The notice requirement is not a mere technicality; it is one of the statutory conditions HII must satisfy before it may charge employees more based on tobacco use. Section 300gg-4(j)(3)(E) requires the plan to "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." The Final Regulations require those materials to include "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v). "[U]nder the DOL regulations, a wellness program must disclose the availability of a reasonable alternative standard ... in all plan materials, including a statement that recommendations of an individual's personal physician will be accommodated." *Bokma,* 783 F. Supp. 3d at 906 (internal quotations omitted).

The Motion to Dismiss Count II should be denied for several reasons. First, as discussed above, Defendants have not provided the Court with all relevant Plan Materials for the entire six-year statutory period. *See* Defs.' Mem. of Law in Supp. of MTD at 23. Plaintiffs' claims cannot be dismissed without discovery on the basis of this incomplete record presented by Defendants in this motion. *Moyer*, 114 F.4th at 568. Those documents which Defendants do append to the motion simply confirm Plaintiffs' allegations. The HII Benefits Guide for 2025-2026, attached as Dkt. No. 24-2 does not provide any information that (1) tobacco surcharge reimbursement will be paid

21

retroactively for all surcharges imposed in the current Plan year when the tobacco cessation program is completed, or (2) that those standards may be waived or avoided by providing a personal physician recommendation.

HII claims this notice is not required in the Benefits Guide,[5] because that document "merely mentions the wellness program without describing its specific terms." (Defs.' Mem. of Law in Supp. of MTD at 23). A simple review of the Benefits Guide confirms that it *does* describe specific terms. It explains that the tobacco surcharge applies to both medical insurance and critical illness insurance. Dkt. No. 24-2 at 9. The Guide explains that employees must declare their tobacco-use status. *Id.* It explains that the premium surcharge is $660 per year for tobacco users. *Id.* It defines "tobacco user" under the terms of the plan. *Id.* It notes that the rate change applies from January 1 or July 1. *Id.* And it explains that an employee who "successfully completes" a tobacco cessation program "can apply for 'tobacco-free' preferred rates," as well as how and when to make that application. *Id.*

This is far more than "merely mentioning" the wellness program, in passing. The Benefits Guide explains the surcharge (including the amount), how it is imposed, defines who it is imposed against, what insurance programs it is imposed on, provides the $660 figure, explains *how* you can apply to have it removed, and *when* you can apply to have it removed.

Taken together, this constitutes a description of the terms of the wellness program, and therefore triggers the disclosure requirement. *See Trout,* 2026 U.S. Dist. LEXIS 89941 at *14

---

[5] In a footnote, HII states that it "does not concede" that the Benefits Guide qualifies as a Plan Material. (Defs.' Mem. In Support of Mot. to Dismiss at 23). But neither does it press an argument, or cite any authority, on this point. To the extent that this one-sentence footnote is intended as an argument, it is waived. *See Grayson O Company v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up).

(materials that "(1) specify the price of the surcharge, (2) explain the certification process, and (3) note the alternative standard" are "extensive enough to qualify as 'description,' and thus to trigger 42 U.S.C. § 300gg-4(j)(3)(E)'s notice requirement"). The Departments confirmed that "a plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." Final Regulations, 78 Fed. Reg. at 33166. Materials that tell participants who pays, why, and how to stop paying the surcharge are "describing [the] terms" of the wellness program, and they trigger the disclosure obligation in full.

Moreover, the Departments' regulatory preamble sets forth a clear bright-line rule noting that whenever the premium differential is set forth, the notice requirements are triggered. Defendants again argue that this language is not entitled to deference but, as explained above, *Auer* deference is appropriate. Defendants also urge that giving effect to this provision would somehow render a provision of the statute ineffective. This argument lacks logical force. A document can theoretically *mention* a wellness program without setting forth the premium differential – it is that circumstance which is contemplated in the statute. The regulations simply provide a clear, bright-line explanation for determining one instance when Plan Material crosses from merely "mentioning" the program to meaningfully describing its terms. Applying this sensible regulatory interpretation does not render the statute meaningless; to the contrary, it gives the statute meaningful effect. This bright-line rule benefits Plan fiduciaries because it provides them with a clear understanding of when additional disclosures are necessary. Defendants chose not to follow that bright-line rule, but their decision to ignore the rule does not somehow render the rule ineffectual.

23

The same holds true of the "Benefits & Wellness Non-Represented Orientation" document attached hereto as an Exhibit.[6] This document provides an explanation of the various medical, dental, vision, and other benefits available to HII employees (including the CII coverage) and contains an FAQ section. The Orientation guide sets forth a detailed cost chart of the various medical plan options, noting that the stated rates are "Non-Tobacco Preferred Rates." (*See id.* at p. 7). It further states that "Tobacco-User rate is $660 more annually," thus explicitly referencing a premium difference based on tobacco use. *Id.* Yet this document says nothing about the availability of tobacco cessation programs or other reasonable alternative standards, and includes no information regarding the required physician-accommodation statement and contact information. It therefore unquestionably falls short of even the most basic notice requirements.

That omission removes the surcharge from the safe harbor. Courts have repeatedly so held. *Chirinian* found the missing physician-accommodation statement was sufficient to allow the claim to proceed because "[a]ll means all . . . no matter how small the requirement may be." 2025 U.S. Dist. LEXIS 144669, at *28. *Leslie* denied dismissal where the employer's materials described the surcharge but omitted required disclosures, including the physician-accommodation statement. 2026 U.S. Dist. LEXIS 76558, at *19–20, *28–31; see also *Bokma,* 783 F. Supp. 3d at 906–07; *Bailey*, 2025 U.S. Dist. LEXIS 190335, at *34–35. Even *Buescher*, which HII cites elsewhere as a supposedly defense-friendly case, declined to dismiss the notice claim. 791 F. Supp. 3d at 906.

---

[6] Notably, HII did *not* attach this document to its Motion to Dismiss. This omission emphasizes why this Motion to Dismiss cannot be granted, because mandatory disclosures must be set forth in *all* Plan materials, not just some, and defendants present only a partial and incomplete record. Where are the Orientation documents for 2021-2026? The Benefits Guides and SPDs from 2020-2025? The *Plan itself* from 2020-June 2022? Plaintiffs are entitled to discovery of these documents, and all other Plan materials, to test the truth of HII's affirmative defense.

24

As to the "other unidentified materials," (Defs.' Mem. of Law in Supp. of MTD at 25) HII again places the burden on the wrong party. It is Defendants' burden to prove all elements of their affirmative defenses. It is *not* Plaintiffs' burden to "plead around" this defense and identify every single relevant Plan material. Nor would it be possible for Plaintiffs to do so, without the benefit of discovery as to all Plan materials for the full six-year statutory period. The Supreme Court made clear in *Cunningham v. Cornell,* and the cases cited therein, that ERISA does not require a complaint to preemptively negate the elements of an anticipated affirmative defense. Plaintiffs have adequately pleaded that the tobacco surcharge violates ERISA's anti-discrimination provisions. If Defendants believe they have a legitimate affirmative defense, they must prove that defense through discovery, after Plaintiffs have had a full and adequate opportunity to test all elements of the defense.

## V.      Plaintiffs' Fiduciary Claims Should Proceed

Defendants first argue that Plaintiffs failed to allege a Plan loss. This represents a fundamental misunderstanding of ERISA liability. Under ERISA § 409, a breaching fiduciary is liable both to "make good" any "losses to the plan" and to "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." 29 U.S.C. § 1109(a). Those remedies are disjunctive, and disgorgement of fiduciary profit does not depend on a net loss to the Plan. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008); *Pender v. Bank of America Corp.*, 788 F. 3d 354, 366-67 (4th Cir. 2015) (citing *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F. 3d 406, 415-16 (3d Cir. 2013) ("ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs.")).[7] Defendants' authorities treat the Plan as having "broken

---

[7] HII cites contrary out-of-state district court cases such as *Williams, Trout,* and *Noel*, but those decisions cannot overrule the binding Fourth Circuit holding in *Pender*. The only Fourth Circuit case Defendants do cite in this section – *Stegemann v. Gannett Co.* – reversed a district court's

25

even" because it received the same total funding either way, but breaking even is the injury, not an answer to it. Section 1109(a)'s profits clause reaches "any profit which would have accrued to the [plan] if there had been no breach," *LaRue,* 552 U.S. at 253 n.4, and Plaintiffs allege Huntington captured precisely that profit by using participant-paid surcharge proceeds to satisfy funding obligations it otherwise would have borne.

In any event, Plaintiffs plausibly allege Plan harm: if surcharge proceeds were used to offset employer contribution obligations, the Plan was deprived of funding it otherwise would have received, leaving Defendants with a "windfall." Compl. ¶¶ 117, 118. Whether the Defendants' use of those proceeds caused Plan loss, or fiduciary profit, is a fact question not suited to resolution on the pleadings. *See Bokma,* 783 F. Supp. 3d at 903 ("Plaintiffs plausibly plead a loss to the entire Plan… by alleging that Plaintiffs and members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks."); *Leslie*, 2026 U.S. Dist. LEXIS 76558, at *32–36 ("This Court agrees with the majority view and concludes that, at least at the motion to dismiss stage, Plaintiffs have plausibly alleged a loss to the Plan.")*; Bailey,* 2025 U.S. Dist. LEXIS 190335 at *20 (allegations that the defendant commingled the funds with its own and enriched itself at the expense of the plan sufficiently pleaded harm to the plan); *Mehlberg,* 2025 U.S. Dist. LEXIS 84589 at *20 (allegation that defendant / employer kept the tobacco surcharge instead of depositing into the plan is "sufficient to show a loss to the Plan.").

---

granting a Motion to Dismiss and held that Plaintiffs did adequately "set out facts describing how Defendants failed to monitor a fund, which led to a failure to recognize and remedy a defect, which then led to a loss to the Plan." 970 F.3d at 468 (4th Cir. 2020). *Stegemann* is no help to Defendants at all. In any event, nothing in *Stegemann* purports to overrule or undermine *Pender*. At most, *Stegemann* used somewhat loose language when describing an element of the claim that was not truly in contention in that particular case.

Defendants then argue that the Complaint "is insufficient to plausibly allege that the Committee was a fiduciary with respect to the complained of conduct…" (Defs.' Mem. of Law in Supp. of MTD at 26). The Committee is, by definition, a fiduciary; it is named in the Plan as such and exists solely for the purpose of exercising fiduciary duties with respect to administering the Plan. *See* HII Group Benefits Plan, Dkt. No. 24-3, § 7.01. It appears that Defendants are attempting to graft arguments regarding the settlor/fiduciary distinction into this Motion; however, those arguments could only plausibly apply to HII (who is, at least at times, acting as a settlor with respect to the Plan). Plaintiffs' breach of fiduciary duty claims in Counts III and IV are explicitly directed at the Committee, not at HII. Whatever the merits of the settlor/fiduciary argument in *other* cases, that distinction makes no sense in the context of this case, against the Committee.

In determining whether a party's conduct is governed by ERISA's fiduciary duties, the central inquiry is whether the party was acting as an ERISA fiduciary "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Settlor functions, which are not subject to ERISA's fiduciary duties, include "decisions . . . regarding the form or structure of the [p]lan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). Fiduciary functions include administering or managing the plan, *see Pegram,* 530 U.S. at 225-226, and "the common transactions in dealing with a pool of assets," *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (cleaned up). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a plan." *Pegram,* 530 U.S. at 222.

Applying the fiduciary analysis to the Complaint's allegations, it is clear that it asserts plausible claims of fiduciary breach against the Committee. The Complaint does not merely challenge the initial decision to adopt a surcharge; it challenges the Committee's ongoing

27

administration of the program, its discretionary control over the participant communications that omit required information, and its discretionary decisions about how to use the surcharge proceeds. Those are classic fiduciary functions exercised by the Committee in its day-to-day administration of the Plan.[8]

The clear majority of Courts considering similar tobacco surcharge breach of fiduciary duty claims have rejected the same settlor defense. *See Leslie,* 2026 U.S. Dist. LEXIS 76558*,* at \*30–36 (rejecting settlor argument where plaintiff alleged that defendant acted as plan sponsor, withheld millions of dollars in tobacco surcharges, failed to properly disclose material information about its wellness program, and failed to disclose a reasonable alternative standard to participants); *Bailey,* 2025 U.S. Dist. LEXIS 190335*,* at \*51-55 ("Plaintiff pleads enough facts about [defendant's] discretionary acts to plausibly state a claim that [defendant] is a fiduciary for the tobacco wellness program in several ways."); *Hill*, 2026 U.S. Dist. LEXIS 69336, at \*29 ("[T]he allegation that Defendants impermissibly withheld contributions to the Plans plausibly supports the inference that Defendants acted as fiduciaries."); *Baker v. 7-Eleven, Inc.,* 2026 U.S. Dist. LEXIS 33855, \*15-16 (N.D. Tex. Feb. 19, 2026) (same); *Bokma*, 783 F. Supp. 3d at 899–900 (same); *Walker*, No. 1:26-cv-00516 (Tr. of Mot. Hr'g 31:2–6) (same).

Defendants challenge the breach of loyalty claim, primarily relying on a misplaced pronoun antecedent. (Defs.' Mem. of Law in Supp. of MTD at 27) (Paragraph 117 of the Complaint inelegantly references "its costs" in a way which could be read to mean "the Committee's costs," rather than "HII's costs"). HII seeks to make much of this grammatical slip. However, when read

---

[8] To the extent that Defendants are arguing that HII, rather than the Committee, conducted those fiduciary functions, this information will come out in discovery and Plaintiffs can amend their Complaint accordingly.

in context with paragraph 118, which correctly identifies HII as the ultimate beneficiary, the gravamen of the complaint is clear: the Committee disloyally placed the interests of HII (the employer) ahead of the interests of the participants (the employees). This is explicitly forbidden by ERISA Section 404(a)(1)(A), which requires a fiduciary to "discharge his duties solely in the interest of the participants and beneficiaries." The Complaint alleges that the Committee unlawfully collected surcharges from the Plan participants and beneficiaries and used that money to reduce HII's costs associated with funding the Plan. Compl. ¶¶ 117-119. The benefit of the unlawful surcharges therefore ultimately redounded to HII. *Id*. It is a classic breach of loyalty for a plan fiduciary to wrongfully collect money from participants, to their detriment, in order to directly or indirectly benefit the employer. The motion to dismiss the fiduciary loyalty claim should therefore be denied.

With respect to the breach of the duty of prudence in Count IV, the legal standard is that the Committee must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…" 29 U.S.C. § 1104(a)(1)(B). A reasonably prudent fiduciary, administering this Plan and its tobacco surcharge, would have done so in a way to carefully and diligently ensure that the surcharge was carried out in strict compliance with the laws, and that all Plan materials carried the legally mandatory notices discussed above. The Committee fell short of this standard by "failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge" and "fail[ing] to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge." Complaint, ¶¶ 124-125. Further details await development through discovery and deposition, but this allegation suffices on a motion to dismiss. The sole authority cited by

29

Defendants is *Hanigan v. Bechtel Glob. Corp.*, 2024 U.S. Dist. LEXIS 190173 (E.D. Va. Oct. 18, 2024), a wholly inapposite "excessive recordkeeping" case cited for the generic proposition that fiduciaries owe a duty of prudence. It has no direct application to the case at bar.

## VI.    Plaintiffs Have Alleged a Failure to Monitor

HII does not dispute that it had authority to appoint and remove members of the HII Administrative Committee, *see* Compl. ¶ 130, or that ERISA imposes on the appointing fiduciary a continuing duty to monitor those appointees and to act if they fall short. *See In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) ("An appointing fiduciary's duty to monitor his appointees is well-established."). Huntington's only argument is that the monitoring claim is "wholly derivative" of the underlying fiduciary-breach claims. That rule cuts in Plaintiffs' favor: because Plaintiffs have adequately pleaded the underlying claims, *see supra* § II-V, the monitoring claim survives as well — as Huntington's own authority confirms. *See Jacob v. RTX Corp.*, 817 F. Supp. 3d 341, 354 (E.D. Va. 2026) (dismissing monitoring claim only because no underlying breach was alleged). The claim is not conclusory: Plaintiffs allege that HII failed to monitor whether the Committee administered a compliant program and failed to take corrective action despite ongoing non-compliance. Compl. ¶¶ 131–133.

## VII.    Any Dismissal Should Be Without Prejudice to the Right to Amend

If the Court finds any aspect of the Complaint deficient, Plaintiffs respectfully request leave to amend. *Boone v. DeJoy*, 2022 U.S. Dist. LEXIS 98265, at *5 (E.D. Va. June 2, 2022) (stating a "strong presumption that leave to amend a pleading should be freely granted") (citation omitted).

## <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs' respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.

June 22, 2026

Respectfully submitted,

/s/ Zev H. Antell
Zev H. Antell (VSB No. 74634)
Paul M. Falabella (VSB No. 81199)
**BUTLER CURWOOD, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: zev@butlercurwood.com
Email: paul@butlercurwood.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos, *pro hac vice*
20283 State Road 7, Ste 592
Boca Raton, FL 33432
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

**STIEGLER LAW FIRM LLC**
Charles J. Stiegler, *pro hac vice*
318 Harrison Ave., #104
New Orleans, La. 70124
Telephone: (504) 267-0777
charles@stieglerlawfirm.com

**BLOOM LEGAL LLC**
Seth J. Bloom, *pro hac vice*
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
Email: sjb@bloomlegal.com

**HORAN & HORAN, PLLC**
M. Kevin Horan, *pro hac vice*
Bradley D. Daigneault, *pro hac vice*
1500 Gateway
P.O. Box 2166
Grenada, MS 38902

31

Telephone: (662) 226-2185
Email: horanmain@horanandhoranlaw.com

*Attorneys for Plaintiffs and Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 22, 2026, a copy of the foregoing was filed electronically and served upon all counsel of record via operation of the Court's CM/ECF System or by mail upon anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Zev Antell*
Zev Antell (VSB No. 74634)

33